**13 PAGES**
**LAW OFFICES OF GABRIEL LIBERMAN, APC**
Gabriel E. Liberman (SBN 303010)
Attorney@4851111.com
2033 Howe Avenue, Suite 140
Sacramento, California 95825

Telephone:    (916) 485-1111
Facsimile:     (916) 485-1111

Attorney for FIRST CAPITAL RETAIL, LLC

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>FIRST CAPITAL RETAIL, LLC<br><br>FEIN: 47-2494283<br><br>          Debtor, | Case No. 2017-26125<br>DCN: GEL-004<br><br>**MOTION FOR AN ORDER AUTHORIZING USE OF CASH COLLATERAL OF BYLINE BANK**<br><br>Date: _____<br>Time: _____<br>Location:   501 I Street, 7th floor,<br>               Courtroom 28;<br>               Sacramento, CA<br><br>Judge:  Honorable Michael S. McManus |

      FIRST CAPITAL RETAIL, LLC, (the "**Debtor**"), by and through their attorney, Gabriel E. Liberman, respectfully requests the Court to approve this Motion for an Order Authorizing Use of Cash Collateral of BYLINE BANK (the "**Motion**"). This Motion is made and based upon the memorandum of points and authorities provided herein and the Declaration of Debtor's Managing Member, Rameshwar Prasad, which have been filed concurrently herewith, as well as the papers

1

and pleadings on file herein, judicial notice of which is respectfully requested, and any argument of counsel entertained by the Court at the time of the hearing of the Application.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

1. On September 14, 2017 (the "**Petition Date**"), Debtor filed its voluntary petition for relief under Chapter[1] 11 of the Bankruptcy Code, thereby commencing the above-captioned case (the "**Chapter 11 Case**"). See ECF No. 1.

2. No request has been made for the appointment of a trustee or examiner, and no official committees have been appointed in this case.

3. The cash collateral at issue is the income generated by Debtor's business transactions whereby Debtor operates fourteen retail franchise locations throughout California. These retail franchises include Focus Brands such as Auntie Anne's, Cinnabon and Mrs. Fields.

4. This Motion seeks to approve use of Cash Collateral as of the Petition Date. Debtor request that this Court authorize and approve Debtors' use of cash collateral for the payment of the operating expenses as set forth in the budget attached hereto as **Exhibit A**

### II.

### JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1134. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

---

[1] All references to "Section" herein shall be to the Bankruptcy Code appearing in Title 11 of the U.S. Code; all references to a "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "LBR" shall refer to the Local Rules of Practice for the United States Bankruptcy Court for the Eastern District of California

6.　　　The statutory basis for the relief sought herein arises from Sections 105, 361, 363, 364, 1107 and 1108 of the Bankruptcy Code.

7.　　　Venue of the Debtor's Chapter 11 Case in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.　　　This Application is a "core proceeding" which the court has jurisdiction to decide pursuant to pursuant to 28 U.S.C. § 157(b)(2)(A).

## III.

## DISCUSSION OF DEBTS

### A.　　　SBA LOAN

9.　　　Byline Bank successor by merger to Ridgestone Bank ("**ByLine Bank**") holds two Promissory Notes ("**Notes**") with principal balance amounts as of the Petition Date of $1,999,732.36 and $171,176.76. The Notes are secured by two UCC-1 financing statements both recorded on January 28, 2016 against Debtor's personal property. Both loans were acquired at the inception of Debtor back in 2015 and are guaranteed by the Small Business Administration. A true and accurate copy of both UCC-1 Financing Statements are attached hereto as **Exhibit B**.

### B.　　　FACTORING LOANS

10.　　　Debtor was previously owned and operated by Suneet Singal (the "**Prior Owner**"). On February 23, 2017, the Prior Owner entered into a contractual agreement to sell his membership interest of First Capital Retail, LLC to Rameshwar Prasad (the "**New Owner**"). A true and accurate copy of this Purchase Agreement is attached hereto as **Exhibit C**.

11.　　　Thereafter, the Prior Owner, without the consent and authorization of the New Owner leveraged the Debtor assets by securing four factoring loans against Debtor's future receivables. These merchant loans were taken out after the transfer of the business on February 23, 2017 and

occurred on April 6, 2017, May 17, 2017, July 21, 2017 and August 14, 2017. These factoring loan were signed by the Prior Owner acting as "Managing Member" for First Capital Retail, LLC.[2] Collectively these loans will be referred hereafter as the ("**Factoring Loans**"). Attached hereto as **Exhibit D- G** are true and accurate copies of the four factoring loans and UCC-1 liens.

C.　　SUMMARY

12.　　In total, there are five (5) creditors that hold security interest against Debtor's cash collateral:

| CREDITOR NAME / TYPE | SECURITY INTEREST | DATE PERFECTED | EXHIBIT |
|---|---|---|---|
| BYLINE BANK, successor by merger of Ridgestone Bank / SBA loan | UCC-1 | 1/28/2016 | B |
| BYLINE BANK, successor by merger of Ridgestone Bank / SBA Construction Loan | UCC-1 | 1/28/2016 | B |
| ESBF California, LLC / Factoring Loan | None. | 4/6/2017 | D |
| Global Merchant Cash / Factoring Loan | UCC-1 | 5/17/2017 | E |
| YellowStone Capital West LLC / Factoring Loan | UCC-1 | 7/21/2017 | F |
| World Global Financing / Factoring Loan | UCC-1 | 8/14/2017 | G |

IV.

**RELIEF REQUESTED**

14.　　At the present time, it is imperative that Debtor obtains approval from this Court in accordance with 11 U.S.S 363 (c)(2)(B), to use Creditor's cash collateral. In order to continue its retail business, Debtor must be able to pay its employees, post-petition franchise royalties and costs, and costs of goods. To pay for these expenses, Debtor needs to be able to use the cash

---

[2] For informational purposes only: A fourth factoring loan was taken out by the Prior Owner with ESBF California, LLC on April 6, 2017. No UCC-1 lien had been recorded at the time this case was filed.

4

generated from its retail sales. This careful utilization of cash collateral by Debtor will work directly to safeguard Debtor's primary source of income and thus foster Debtor's ability to reorganize in accordance with Chapter 11 of the Code.

15. In accordance with section 363(c)(2)(B) of the Code, Debtor request that this Court authorize and approve Debtors' use of cash collateral for the payment of the operating expenses as set forth in the budget attached hereto as **Exhibit A**. In order to continue business activity in an effort to achieve successful reorganization, Debtor must be permitted to use cash collateral in their ordinary business operations. Debtor currently has no present alterative borrowing source from which Debtor could quickly secure sufficient additional funding to manage the necessary business expenses.

16. All Cash Collateral heretofore collected and in the possession or under the control of the Debtor, and all Cash Collateral hereafter collected by the Debtor, shall be deposited into the Debtor-in-Possession bank account (the "**Cash Collateral Account**") held at Wells Fargo Bank.

17. The Debtor wishes to use these funds as follows:

　　a)　**Adequate Protection Payments**

　　i. ByLine Bank

Debtor shall remit to ByLine Bank monthly adequate protection payments (the "**Adequate Protection Payments**") of interest only payments on both Notes in the total amount of $11,032.47[3] no later than the 15th of each month, such payments to be retroactive to the Petition Date.

　　ii. Factoring Loans

---

[3] Payment will vary as notes are variable interest rates. See Budget attached hereto for change to monthly payment for next 6 months.

5

For this motion, Debtor is not seeking to pay any adequate protection payments to the Factoring Loans. Instead, all excess funds will be set-aside in a DIP account, which Debtor will not use without further permission from Creditors or the Court.

In evaluating the sufficiency of the adequate protection offered, the court looks to the extent of the creditor's interest in the property, the potential harm in the Creditor's interest due to a decline in property value and the proposed protection. March & Ahart, CAL PRAC. GUIDE: BANKRUPTCY, § 14: 131; (The Rutter Group 2010). 11 U.S.C. §361 (1) allows periodic cash payments as adequate protection.

Debtor asserts that no adequate protection payment is required because Factoring Loans are adequately protected by their security interest in Debtor's cash on hand, inventory, all assets-equipment and fixtures. The value of all of Debtor's assets is estimated at $15,953,121.78 as of Petition Date. Therefore, Factoring Loans are far over-secured. Debtor contends that the value of the collateral will not be diminishing during this case. As such, Factoring Loans are already adequately protected and do not require an adequate protection payment at this time.

Further, use of the cash collateral will not diminish Factoring Loan's security interest in any meaningful way. A good portion of the cash collateral will be used to purchase inventory. The inventory will then be sold, once again creating cash. Factoring Loans have a security interest in both the inventory that will be purchased as well as the cash resulting from the sale of the inventory. Therefore, at least in part, Debtor is merely changing the form of the security, not the amount.

Because Factoring Loans are over-secured, because for at least a portion of the cash collateral Debtors are merely changing the form of the security as opposed to the amount, and

because Debtors will be setting aside all cash collateral generated from the property after the deduction of reasonable expenses, Creditor is adequately protected.

  b) **Adequate Protection Lien on All Post Petition Cash Collateral**

As further partial adequate protection for the continued use by the Debtor of the Cash Collateral as provided for under this Motion, ByLine Bank shall be granted a valid, duly perfected, enforceable and non-avoidable replacement lien and security interest of the same priority in all post-petition Cash Collateral (collectively, the "**Post-Petition Collateral**"). The Debtor shall execute such documents as ByLink Bank may require to perfect its security interest hereunder, but entry of the Court's order approving this Motion shall constitute a validly perfected first lien and security interest upon the Post-Petition Collateral generated after the Petition Date and no filing, recordation or other act in accordance with any applicable local, state or federal law shall be necessary to create or perfect such lien and security interest.

  c) **Business Expenses**

1. Debtor proposes to use the funds generated from the business to pay the general operating and administrative expenses of the business, as laid out in Exhibit B. Each expense listed is necessary for the following reasons:

**Cost of Goods Sold (5000-5030[4])**

2. **Costs of Goods Sold** are a necessary expense for Debtor to pay to continue business operations. The Debtor must purchase inventory which include food, beverages, paper products, janitorial products to operate its franchise locations. If the Debtor is not permitted to use cash collateral it will not be able to fulfill the food orders which will cause Debtor to lose customers and ultimately any revenue. By not having any future sales Debtor will have no other source of income

---

[4] All references to four-digit numbers hereto refer to the attached cash collateral budget and refers to Debtor's internal accounting for these categories.

to maintain business operations by paying for the necessary business expenses outlined in Exhibit B. Debtor would lose many of its sales which is detrimental to Debtors effort to increase cash flow to repay its debts and operate effectively.

### **Labor Expense Category (5040-5060)**

3. **Labor/Payroll** for crew members is a necessary expense because Debtor has over 200 part-time and full-time employees that must be paid to operate its fourteen franchise locations throughout California. Without paying Debtor's staff, employees would stop working and Debtor would not be able to reorganize its debts since there would be a cease of business operations.

4. **Labor/ Management** is a necessary expense because Debtor must manage its 200 employees and day to day business operations to operate. Without paying Debtor's management staff the Debtor would not be able to reorganize its debts since there would be a cease of business operations.

5. **Workers Compensation** is a mandatory type of insurance that is required not only by the State of California but the Bankruptcy Court. If this was not paid Debtor's case would likely be dismissed and interest and penalties on the post-petition debt would be incurred.

6. **Payroll Processing Fees** is a necessary expense due to Debtor's operational size of fourteen retail locations and over 200 employees. Without paying a payroll processing company to manage its payroll, debtor would not be able to focus on its general business operations and would be entrenched in dealing with issuing and processing payroll for over 200 employees every two-week pay cycle. Labor costs to manage this alone would exceed the payroll processing fees and would be detrimental to debtor's reorganization.

7. **Human Resource & District Manager** are necessary for Debtor to continue running the operation as Debtor must comply with Federal labor laws and Federal ADA laws as well as manage locations spread out throughout California. There are currently approximately 200 employees on full time and part time basis.

8. **Small Equipment** is a necessary expense as Debtor must replace miscellaneous equipment broken during day to day operations of operating the franchise stores.

9. **Merchant Account Fees** is a necessary expense as Debtor's customers purchase the goods from Debtor's franchise locations by credit and debit card processing. Without being able to process credit card sales, Debtor would lose most of its customers as they would only be able to accept cash payments.

### General Expense Category (6010-6070)

10. **Accounting Expense Fees** is a necessary internal department of Debtor which is responsible for reviewing the transactional debits and credits of the business. Debtor's business is a cash and credit card business and all daily transactions must be reconciled.

11. **Advertising Expense** is a necessary expense to promote the fourteen franchise locations throughout California. If Debtor was to cease advertising they would lose a large portion of their market and Debtor would lose many of its sales which is detrimental to Debtors effort to increase cash flow to repay its debts and operate effectively.

12. **Bank Service fees** is a mandatory expense that the bank charges for normal usage of the bank accounts. If these fees are not paid the bank would close the bank accounts and Debtor would not be able to operate without having access to its funds.

13. **Company Repairs and Maintenance** is a necessary expense as each franchise location has a point of sale system and computer, router, internet, fire wall that is mandated and

needed to be PCI compliant. This category also covers Freedom Pay, which the most compliant credit card acceptance system. As equipment's break they are replaced. Without being able to process credit card sales, Debtor would lose most of its customers as they would only be able to accept cash payments.

14. **Computer Expenses** is a necessary expense to cover the replacement costs of computer equipment when it breaks down. These include but not limited to: monitors, PC and Tablets used for training and point of sale system. This is also for leased terminals for the credit cards as well as payments and video surveillance monthly dues.

15. **Dues and Subscriptions** is a necessary expense for Debtor to operate its management department. Dues include corporate online storage (cloud software), Microsoft office subscription and email services and dues for point of sale integration paid to franchisor, Focus Brands.

16. **Franchise Royalties and Adverting Expenses** are a necessary expense for Debtor to operate the Focus Brands Franchise stores. Royalty expenses are based on sales generated from the fourteen franchise locations. If Debtor was not able to pay its franchise royalty and marketing expenses, the Franchisor could terminate its relationship with Debtor which is detrimental to Debtors effort to reorganize and pay its debts.

**Insurance Expense Category (6090)**

17. **Liability insurance** is a mandatory expense to operate Debtor's business operations to protect itself from liability. This insurance is also required by the Chapter 11 bankruptcy court and Debtor's case would likely dismiss if Debtor did not carry liability insurance.

**Miscellaneous Expense Category (6100-6180)**

18. **Janitorial Expense** is a necessary expense to operate Debtor's business. Debtor must purchase cleaning supplies and chemicals which are required to meet the health and safety standards set by the State of California's health department. If Debtor were to be incompliant, the health department would shut down Debtor's franchise locations in violation resulting in loss of sale.

19. **Legal Fees /The United States Trustee Quarterly Fees** is a mandatory expense that is required in a chapter 11 bankruptcy proceeding. Without paying this expense the Debtor's case would be at risk of dismissal.

20. **License and Permit Expenses** is a necessary expense for the Debtor to be compliant with City ordinances to operate each of its franchise locations with valid business licenses and State of California Franchise Board of Equalization permit sale requirements.

21. **Meals and Entertainment** is a necessary expense for Debtor to continue to operate at its optimum level. When manager meeting occur, meals are bough for employees, which is an important part in helping retention, sharing ideas to operate business and keep cost inline.

22. **Office-Shop Supplies/Postage** are required expenses because they cover miscellaneous expenses such as toiletries, paper towels, paper, ink, propane for the forklift, and postage for mail. Without these expenses paid Debtor could not operate at full capacity, causing Debtor to lose customers and eventually run unprofitably.

23. **Outside Services/Office Rents** is a necessary expense because this covers the lease cost for Debtor's Sacramento management's team location. Without this location, Debtor's management staff would not be able to operate the Debtor's business.

24. **Payroll tax** is a mandatory tax per the Internal Revenue Services (IRS) and Franchise Tax Board (FTB). If Debtor did not pay this expense Debtor would incur a large amount

of debt to the IRS and FTB post-petition which would burden Debtors change or reorganizing its debts.

25. **Property Taxes** is a necessary expense and is based on assessments by local jurisdiction and paid to obtain and maintain business licenses and also as accessed by landlords.

26. **Rent or Lease Expenses (6190-6196)** are necessary expenses for Debtor to continue to operate its fourteen franchise locations throughout shopping malls in California. If Debtor was not able to pay its commercial lease costs, the landlords would seek relief from the automatic stay and evict Debtor which is detrimental to Debtors effort to reorganize and pay its debts.

### Technology (6205)

27. **POS Monthly Hosting** is a necessary expense for ongoing software licenses for the point of sale system as mandated by the franchisor.

28. **Telephone, Internet, Data** are necessary expenses to keep in contact with clients, vendors, and operate the business normally. Without the phone lines Debtor would not be able to operate. Without internet Debtor would not connect to clients by email or through the website which would severely hinder Debtor's ability to operate.

29. **Travel Expense (6220)** is a necessary expense for Debtor's management to travel throughout California to visit the various franchise locations as well as franchisor required training for managers.

30. **Uniform Expense (6230)** is a necessary expense for Debtor's crew members which are employed at the various franchise locations to be compliant with franchisor's uniform requirements.

31. **Utility Expenses (6250-6259)** are necessary expenses because this pays the primary utilities that the Debtor uses like heating and gas at its franchise locations. Without heating and gas Debtor would not able to operate its franchise locations properly to conduct normal business activities.

## V.

### PRAYER

**WHEREFORE**, Debtor requests an order pursuant to 11 U.S.C 363 (c)(2)(B) granting:

1. Authorizing the use by Debtor of the cash collateral according to the budget (see Exhibit B);
2. If the court continues the final hearing on this motion to another date, then authorize the interim use of cash collateral for expenses to prevent irreparable harm;
3. Granting a continuing replacement lien in favor of the Byline Bank and Factoring Loans on Debtor's property, to the extent of his interest in cash collateral on the date of the order for relief;
4. Determining that the interest of the Factoring Loans in the collateral is adequately protected through compliance with the cash collateral budget.
5. Allowing Debtor to modify or extend by mutual agreement with Byline Bank and Factoring Loans the cash collateral authorization without further order of the court.

Dated: October 6, 2017

                             LAW OFFICES OF GABRIEL E. LIBERMAN, APC

                             By:     */s/* Gabriel E. Liberman
                                           Gabriel E. Liberman
                                           Attorney for First Capital Retail, LLC
                                           2033 Howe Avenue, Suite 140
                                           Sacramento, California 95825
                                           Telephone: (916) 485-1111