**9 PAGES**

**LAW OFFICES OF GABRIEL LIBERMAN, APC**
Gabriel E. Liberman (SBN 303010)
Attorney@4851111.com
2033 Howe Avenue, Suite 140
Sacramento, California 95825

Telephone: (916) 485-1111
Facsimile: (916) 485-1111

Attorney for FIRST CAPITAL RETAIL, LLC

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>FIRST CAPITAL RETAIL, LLC<br><br>FEIN: 47-2494283<br><br>Debtor, | Case No. 2017-26125<br>DCN: GEL-015<br><br>Date: February 20, 2018<br>Time: 10:00 A.M.<br>Location: 501 I Street, 7th floor,<br>Courtroom 28;<br>Sacramento, CA<br><br>Judge: Honorable Michael S. McManus |

**DECLARATION OF RAMESHWAR PRASAD IN SUPPORT OF
DEBTOR'S EMERGENCY MOTION FOR ENTRY OF ORDER
(I) APPROVING CERTAIN BIDDING PROCEDURES,
(II) AUTHORIZING OVERBID PROTECTIONS, INCLUDING
BREAKUP FEE AND EXPENSE REIMBURSEMENT, AND
<u>(III) GRANTING RELATED RELIEF</u>**

I, Rameshwar Prasad, hereby declare as follows:

1. I am over the age of 18 and am mentally competent and I make this declaration in support of motion (the "**Motion**") for the entry of an order, substantially in the form attached to the Motion as **<u>Exhibit A</u>** (the "**Bidding Procedures Order**") (i) approving certain proposed Bidding Procedures (as defined below) in connection with the sale of substantially all of the Debtor's assets (the "**Sale**"), (ii) authorizing overbid protections as discussed below, including

-1-

Breakup Fee and Expense Reimbursement (as defined below), and (iii) granting related relief.

2. I am the managing member and president of First Capital Retail, LLC ("**Debtor**"). In my capacity as Debtor's president, I am familiar with Debtor's daily business, operations, and financial affairs. Except as otherwise indicated, all of the facts set forth in this Declaration are based upon my personal knowledge of Debtor's operations and finances, information learned from my review of relevant documents, and information supplied to me by other members of Debtor's management and Debtor's business and legal advisors. If called upon to testify as to the content of this Declaration, I could and would do so.

3. On September 14, 2017, the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned case.

4. The Debtor is operating its business and managing its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. No request has been made for the appointment of a trustee or examiner, and no official committees have been appointed in this case.

6. Debtor is a Nevada limited liability company formed in 2015 that owns and operates Focus Brand (the "**Franchisor**") franchises, which include Cinnabon® and Auntie Anne's® and Mrs. Fields® bakeries in California.

7. On January 21, 2018, the Court granted Debtor's Motion to Extend the Period to Assume or Reject the Leases on Nonresidential Real Property, by ninety (90) Days, to April 12, 2018. As of February 9, the date of the Letter Agreement (defined below), the Debtor was currently operating thirteen (13) Cinnabon franchise locations throughout California, of which three (3) leases were deemed terminated, but two are actively being litigated by the Debtor in state court venues. The lease locations are as follows:

///

///

///

///

///

a. Non-Terminated Real Property Leases still operating:

| Store # | Store Name | Address | City | State | Zip Code |
|---|---|---|---|---|---|
| 15 | Montclair Plaza | 5192 N. Monclair Plaza Lane | Montclair | CA | 91763 |
| 87 | Galleria at Tyler | 1341 Galeria Ct | Riverside | CA | 92503 |
| 94 | Solano Town Center | 1350 Travis Blvd | Fairfield | CA | 94533 |
| 124 | Montebello Town Center | 2134 Montebello Town Center | Montebello | CA | 90640 |
| 260 | Santa Rosa | 1066 Santa Rosa Plaza | Santa Rosa | CA | 95401 |
| 904 | Universal City Walk | 1000 Universal City Plaza | Universal City | CA | 91602 |

b. Terminated Real Property Leases still operating or holding property of the estate as of the Letter Agreement:

| | | | | | |
|---|---|---|---|---|---|
| 36 | 1. Northridge Fashion Center | 9301 Tampa Ave | Northridge | CA | 91324 |
| 80 | Arden Fair | 1689 Arden Way | Sacramento | CA | 95815 |
| 168 | Vintage Faire | 3401 Dale Road | Modesto | CA | 95356 |

c. Non-Terminated Real Property Leases still operating that the Debtor intends on rejecting:

| | | | | | |
|---|---|---|---|---|---|
| 102 | Moreno Valley | 22500 Town Circle | Moreno Valley | CA | 92553 |
| 125 | Northridge Mall | 796 Northridge Mall | Salinas | CA | 93906 |
| 171 | Oakridge Mall | 925 Blossom Hill Road | San Jose | CA | 95123 |
| 348 | Imperial Valley | 3451 S. Dogwood Ave | El Centro | CA | 92243 |

8. On or about February 9, 2018, the Debtor and Pilot Real Estate Group, LLC, ("**Pilot**" or the "**Stalking Horse Bidder**") executed certain letter of intent term sheet (the "**Letter Agreement**") for the sale and purchase, subject to the Court's approval, of the Debtor's business-related assets for $1,200,000.00 (the "**Purchase Price**"). The assets subject to the

Sale shall be as set forth in the Letter Agreement, including, but not limited to: inventory, account receivables, executory contracts, cash, franchise agreements, all assets used in connection with operating the Debtor's various franchise businesses, and assignment of related nonresidential real property leases including seven (7), as defined in paragraph 7 (a) and (b) above, of nonresidential real property leases used to operate the Debtor's franchises, plus additional consideration depending on which other locations, including (2) Century City locations and Oakridge Mall, that may become available due to re-negotiations, assumability and feasibility of cure costs Debtor. (collectively referred hereafter as the "**Assets**").

9. On February 1, 2018, the Debtor filed with this Court a motion to approve stipulation for modification of a certain reinstatement and settlement agreement between the Debtor and the Franchisor, pursuant to which the Debtor and the Franchisor agreed, among other things, that any sale transaction shall close on or before April 12, 2018.

10. Pursuant to the Letter Agreement, the following timeline is established which the Debtor believes is critical to preserving and maximizing the Debtor's business assets as a going concern enterprise and to generate its optimum value.

- February 16, 2018: Deadline for filing this bidding procedures motion
- March 1, 2018: Deadline for Bid Procedures Order to be entered.
- March 7, 2018: Deadline for Debtor and the Stalking Horse Bidder to execute the asset purchase agreement (the "**Asset Purchase Agreement**"), and to file sale motion on an expedited basis seeking approval of the Sale (the "**Sale Motion**").
- March 20, 2018: Deadline for sale order to be entered
- April 9, 2018: Sale closing deadline.

///

## BIDDING PROCEDURES AND OVERBID PROTECTIONS

11. The Debtor's proposed Bidding Procedures (as defined below) and overbid protections are intended to establish an expedited sale process that will maximize the value of the Debtor's Assets for the benefit of the Debtor's estate and its creditors, while at the same time reconciling the demands of that process with the stark realities of the time limitations created by the Debtor's challenged liquidity situation and the significance of its relationship with the Franchisor and landlords, requiring a closing date by April 12, 2019.

    **A) Bidding Procedures**

12. The terms of the bidding procedures are attached to the Motion as **Exhibit B** (the "**Bidding Procedures**"). The Bidding Procedures describe, among other things, (i) the Assets available for sale, (ii) the manner in which bids become "qualified," (iii) if qualified competing offers are received in a timely fashion, the conduct of an auction sale (the "**Auction**") before the Court to determine the highest and best offer, and (iv) the selection and approval of a Successful Bidder (as defined in the Bidding Procedures).

13. The Debtor intends to solicit bids for the Sale in accordance with the Bidding Procedures. The Bidding Procedures reflect the Debtor's objective of conducting an Auction on an expedited basis while at the same time maintaining a controlled, fair and open process, all the while aimed at achieving the highest and best bid is generated for the Assets.

14. The Debtor reserves the right to file separate assumption and assignment procedures for the potential assumption and assignment of certain executory contracts and unexpired leases, including with respect to cure costs and objection deadlines.

    **B) Overbid Protections and Breakup Fee/ Expense Reimbursement**

15. The Letter Agreement provides, in relevant part, as follows:

i. **Breakup Fee**: The Debtor shall pay Pilot a fee in cash (the "**Breakup Fee**") equal to $125,000.00 plus 4.5% of any increase in the Purchase Price for any reinstated lease added to the Sale in the event that –

(a) Pilot terminates the Asset Purchase Agreement due to a material, uncured (if capable of cure) breach by First Capital that would cause the failure of any condition to closing or any misrepresentation by First Capital or its officers, agents or professionals, including but not limited to the financial documentation communication and/or information provided to Pilot or financial documentation filed with the Court, there being no violation of any state or regulatory permit for continued operations and Pilot's ability to obtained all necessary operating permits;

(b) the Asset Purchase Agreement has not already been terminated and First Capital (i) terminates the Asset Purchase Agreement and consummates a transaction for all or a material portion of the Assets pursuant to a higher or otherwise better proposal that is accepted as the winning bid; (ii) files a motion or motions to sell all or any material portion (in one or a series of transactions) of the Assets to a party other than Pilot pursuant to an order of the Bankruptcy Court; or (iii) files with the Bankruptcy Court a proposed Chapter 11 plan that proposes the disposition of all or any material portion of the Assets to a party other than Pilot; or

(c) Pilot terminates the Asset Purchase Agreement due to a failure of the closing to occur prior to April 9, 2018.

ii. **Expense Reimbursement**: The Debtor shall reimburse Pilot for its reasonable and documented out-of-pocket costs and expenses (including legal, accounting, and other consultant fees and expenses, other than any success or similar fees payable to financial advisors or consultants) incurred in connection with the transactions contemplated under the Letter Agreement in an amount not to exceed $75,000.00 (the "**Expense Reimbursement**") in the event the parties execute a definitive Asset Purchase Agreement and the sale to Pilot as contemplated under the Letter Agreement (or Asset Purchase Agreement, as applicable) is not consummated for any reason (other than Pilot's material breach of the Asset Purchase Agreement).

iii. **Overbid Minimum**: Any "qualifying bidder (as that term may be defined in the Bidding Procedures) that bids on the Assets shall propose consideration equal to or greater than the Purchase Price plus (a) the Breakup Fee, plus (b) the Expense Reimbursement, plus (c) ten percent (10%) of the Purchase Price.

16. The Bidding Procedures are designed to promote a competitive and fair bidding process and, thus, to maximize value for the Debtor's estate and creditors. The Bidding Procedures will allow the Debtor to conduct the Auction in a controlled, fair and open fashion that will encourage participation by financially capable qualified bidders, thereby increasing the likelihood that the Debtor will receive the highest and best possible consideration for the Assets. Also, the Bidding Procedures provide an appropriate framework for the Debtor to

review, analyze and compare any bids received in order to determine which bids are in the best interests of the Debtor's estate and its creditors.

17. The Debtor also seeks approval to pay the Breakup Fee and the Expense Reimbursement to the Stalking Horse Bidder upon the terms and conditions of the Letter Agreement, subject to execution of the Asset Purchase Agreement. Such bid protections are in recognition of the Stalking Horse Bidder's substantial expenditures of time, energy and resources, and the benefits to the Debtor's estate of securing a "stalking horse" or guaranteed bid. Without the bid protections, the Stalking Horse Bidder will not finalize and execute the Asset Purchase Agreement.

18. I believe that granting the bid protections to the Stalking Horse Bidder will ensure the Debtor's ability to maximize the realizable value of the Assets for the benefit of the Debtor's estate, creditors and other parties in interest. The bid protections work as an incentive that encourages a potential buyer to invest the time, money, energy and resources required to negotiate with a debtor and perform the due diligence required in connection with the acquisition of a debtor's assets, despite the inherent risks and uncertainties of the chapter 11 process.

19. The bid protections here should be approved and afforded super-priority administrative expense status under the Bankruptcy Code because they provide a clear benefit to the Debtor's estate. I believe the Breakup Fee and Expense Reimbursement are fair and reasonable in view of (a) the size and nature of the transaction, (b) the analysis and negotiation undertaken by the Stalking Horse Bidder in connection with the transaction and (c) the fact that, if the Breakup Fee and the Expense Reimbursement are triggered, the Stalking Horse Bidder's efforts will have influenced the chances that the Debtor receives the highest and best offer for the Assets, to the benefit of the Debtor's estate and creditors. By conducting due diligence, participating in negotiations for a potential transaction and

entering into the Asset Purchase Agreement, the Stalking Horse Bidder has established a bid standard, including a price floor, and initiated a sales process that will serve as a catalyst for other bidders to submit higher and better bids.

20. In addition, no parties will be prejudiced by the Court's approval of the bid protections in these circumstances. To the extent that the Asset Purchase Agreement entices other potentially interested purchasers to participate in the bidding and Auction process, the Breakup Fee will provide a material benefit to the Debtor's estate in the form of an increased sale price. On the other hand, in the event that others are not encouraged by the Asset Purchase Agreement to undertake additional efforts and participate in the Auction, the Breakup Fee will not be paid and, thus, should not affect the value received by the Debtor for the Assets.

21. The proposed Breakup Fee and Expense Reimbursement were the result of arm's length negotiations between representatives of the Debtor, myself and the Stalking Horse Bidder, which is not an insider of the Debtor. Moreover, as noted above, the amount of the bid protections is reasonable and appropriate in light of the size and nature of the sale of the Assets and the efforts that have been and will be expended by Stalking Horse Bidder.

22. In sum, the Debtor's ability to offer the bid protections to the Stalking Horse Bidder enables the Debtor to ensure the sale of substantially all of the Assets at a price it believes to be fair, while, at the same time, preserving the value of its estate and promoting more competitive bidding. The Debtor's payment of the bid protections under the circumstances herein would be (a) an actual and necessary cost and expense of preserving the Debtor's estate; (b) of substantial benefit to the Debtor's estate; and (c) reasonable and appropriate in light of the efforts and the due diligence costs and expenses that have been and will be expended by the Stalking Horse Bidder. Thus, I request that the Court authorize payment

of the Breakup Fee and Expense Reimbursement pursuant to the terms and conditions of the Letter Agreement, subject to execution of a definitive Asset Purchase Agreement.

23. I submit that the foregoing Bidding Procedures and bid protections are fair and transparent and will derive the highest and best bids for the Assets. Therefore, I request that the Court approve the Bidding Procedures and the overbid protections, including the Breakup Fee and the Expense reimbursement.

24. To implement the foregoing immediately, the Debtor seeks a waiver of the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent applicable. As set forth above, the relief requested herein is essential for the Debtor's efforts to pursue the Sale.

25. Based on these facts, I request an entry of the Bidding Procedures Order, granting the relief requested in the Motion and such other and further relief as is just and proper.

I declare under penalty of perjury of the laws of the United States that these facts are true to the best of my knowledge and belief.

    Dated this 16th day of February, 2018

                             */s/ Rameshwar Prasad*
                              Rameshwar Prasad